# Hanners *v.* The State.

## *Murder.*

(Decided July 6th, 1906.   41 So. Rep. 973.)

1. *Jury; List; Preparation.*—A special or other jury venire drawn from a box that contained the names of the resident citizens of only a portion of the county is fatally defective under Section 4982, Code 1896.

2. *Criminal Law; Conversation of Conspirators; Admissibility.*— Conversations had between defendant and two other persons, immediately before the killing, tending to a conspiracy between the parties to the conversation to kill the deceased or to do him great bodily harm is admissible in evidence.

3. *Witnesses; Bias.*—When a witness for the defendant denied making threats against the deceased, and stated that he and deceased were on friendly terms, it was competent to show that witness had made threats against deceased, although made sometime before the killing as tending to show his feelings for deceased and his bias towards defendant.

4. *Criminal Law; Trial; Evidence.*—Evidence incompetent when offered is cured of error if it is afterwards rendered competent.

5. *Same; Limitation of Evidence; Duty of Defendant to Request Limitation.*—Where certain evidence is admissible for a particular purpose only, if defendant desired that it should be limited to that purpose, he should ask instructions from the court to the jury as to such limitation.

6. *Same; Trial; Argument of Counsel.*—Defendant's counsel in argument asked why an alleged co-conspirator was never indicted, and why the State had not produced him. Replying, the solicitor said that if any one was expected to produce such co-conspirator, it was the defendant, as they were on friendly terms and it would be easier for the defendant and the co-conspirator to prove it if no conspiracy existed. Held, that while the remarks of defendant's attorney were improper and could have been excluded, it was not error not to exclude the reply thereto, on the theory that illegal evidence may be rebutted by evidence of the same character.

7. *Homicide; Instructions.*—A charge instructing the jury that if deceased accused defendant of meddling with or encouraging

the difficulty between deceased and another, then defendant had the right to deny such accusation, if it were false, in no uncertain terms, and that if deceased and another were having a difficulty the day deceased was killed, and deceased accused defendant of encouraging the same, it was defendant's duty to emphatically deny such accusation, and that to have been accused of it and not to have denied it would have been a circumstance against him, was properly refused as tending to create in the minds of the jury the idea that defendant was entitled, as a matter of law, to deny the accusation in such manner as to provoke or encourage the difficulty which ensued between them.

8. *Criminal Law; Province of Jury.*—Charges asserting that the evidence fails to show a conspiracy between defendant and certain others to take deceased life; and that if the jury believe the evidence, defendant could not be convicted on the theory that he had entered into a conspiracy, are invasive of the province of the jury and are properly refused.

9. *Same; Instructions as to Evidence.*—A charge asserting that the evidence of a witness taken on preliminary examination was not the evidence the jury should consider as his on this trial, but the jury should take the written showing signed by defendant as being the evidence the witness would give, if present, and give it the same weight as if the witness had testified on the stand, in effect excluded a portion of the evidence from the consideration of the jury and was properly refused.

10. *Homicide; Instructions; Freedom from Fault.*—A charge on self defense which pretermits consideration of defendant's freedom from fault in producing the necessity to take deceased life and of defendant's duty to retreat is properly refused.

11. *Same; Co-defendants; Misleading Charges.*—Where there were tendencies in the evidence to show a conspiracy between defendant and another, a charge asserting that defendant could not be convicted unless the evidence established his guilt independent of the other beyond all reasonable doubt was misleading and properly refused.

APPEAL from Clay Circuit Court.

Heard before HON. JOHN PELHAM.

The defendant and Barney Worthey were jointly indicted for killing Tom Waldrop by shooting him with a gun or pistol. The present defendant demanded a severance, and was tried alone. When the case was called at a former term of the court motion was made to quash

the special venire.   The facts upon which this motion was based were that the jury commissioners, in drawing the grand jurors and petit jurors for the court, discarded six names, and discovering that there were not enough names left in the jury box from which to draw special venire, partially filled the box by putting therein •the names of the qualified male citizens in beats 10 and 11 and part of 14.  The court granted the motion to quash the venire, continued the cause, and declared the jury box invalid.   The commissioners then met, discarded the old jury box, and made up a new jury box by placing therein the names of all the qualified male citizens of the county.   From this new box, the special venire to try this particular case was drawn.   The defendant objected to the drawing of a special jury from ·this box· and for grounds of objection set out the facts as above stated. This objection being overruled, and the special venire being drawn from the box, he made a motion to quash the special venire on the ground and facts as above set out.   The motion to quash was overruled.

The State offered testimony tending to show that just previous to the difficulty Bud Orr called defendant into the store near which the difficulty took place and asked him if he was going to stick up to him as he promised to do, as he was about to have some trouble.  Worthey also called defendant and asked him if he was going to stick up to old man Bud Orr, as it was agreed that they should do, and defendant replied that he was, and Worthey replied be sure and run a little before you do it.   That immediately after the conversation defendant walked out of the store and commenced the difficulty by calling deceased a d——ned liar, and in which difficulty the fatal shooting occurred .  The  evidence  in  this connection tended to show that immediately after these conversations and after the lie had been passed, deceased went into the store and procured some weights and attempted to strike the defendant but was prevented from doing so.   That deceased was on one side of the store building and Hanners and Worthey on the other side with a crowd around them.   That Hanners pushed the crowd aside with the assistance of Worthey, and came around

the corner of the store to where he could see deceased when he commenced to fire on deceased inflicting the fatal wound. Worthey then remarked: "Well, you have fixed him now, and we had better go," and defendand said, "Yes, get your horse and we will go." The other facts necessary to an understanding of the opinion sufficiently appear therein. The counsel in arguing the case for the defendant, said: "The solicitor claims a conspiracy in this case between the defendant, Barney Worthey, and Bud Orr. Why was Bud Orr never indicted? If he was in the conspiracy, why hasn't the state got him here? Where is Bud Orr?" No objection was interposed to this argument. The solicitor, in his closing argument, said: "Defendant's counsel has asked why it is that the state did not have Bud Orr here upon the trial of this cause. It seems to me that if any one could be expected to have Orr here, it would be the defendant. From the evidence it is clearly shown that Orr and the defendant and his co-conspirator, Worthey, were friendly, and together that day, and if no conspiracy existed between these parties, it would be an easy matter for them to have all been present in order to explain or deny the conspiracy. Defendant objected to this argument and moved to exclude it.

The defendant requested the following written charges which were refused: "(3) I charge you that if you believe from the evidence that Waldrop accused Hanners of meddling with or encouraging the difficulty between Waldrop and Orr, then it was Hanners' right to have repudiated any such accusation if it was false in no uncertain terms. (4) I charge you that the evidence in this case fails to show that there was any conspiracy between Hanners and Worthey, or Hanners, Orr and Worthey to take the life of Waldrop. (5) I charge you that if you believe the evidence in this case, the defendant could not be convicted on the theory that he had entered into a conspiracy to take the life of Waldrop. (6) I charge you that the evidence of Jim Cotney on the preliminary trial is not the evidence that you must consider as being the evidence of Cotney on the present trial, but you will take the written showing signed by Hanners as being

exactly what Cotney would swear if present, and give it just such weight and consider it just as you would if Cotney had been here, and sworn to it from the stand " "(10) I charge you that if you beleve from the evidence that Waldrop had a shotgun in his hand in a threatening manner and Hanners heard a number of voices hollering, 'Look out, George, he is going to shoot you with a shotgun,' and that Hanners immediately stepped from behind the corner of the house and saw Waldrop with a gun pointing towards him, and acting in the honest belief that he was in danger of being shot and killed by Waldrop, then it would make no difference whether Waldrop was really aiming to shoot or not, your verdict should be not guilty. (11) I charge you that if you be lieve from the evidence that Bud Orr and Waldrop had been having a difficulty there the day Waldrop was killed and that Waldrop accused Hanners of encouraging said difficulty, then it was not only Hanners' right, but it was his duty, to emphatically deny any such accusation, and that to have been accused of it, and not denied it, would have been a circumstance against him. (12) I charge you that you are not trying Barney Worthey, but you are trying George Hanners, and you cannot convict Hanners unless the evidence shows his guilt independent of Barney Worthey, beyond all reasonable doubt." "(21) I charge you that if Hanners shot with bona fide belief that he was in great danger of being shot by Waldrop then it would make no difference whether Hanners was in danger or not, your verdict should be not guilty."

D. H. RIDDLE, for appellant.—The conversation between Orr and Hanners before the killing was inadmissible.—*Fonville v. The State*, 91 Ala. 39; *Domingus v. The State*, 94 Ala. 12. Threats are not admissible when made by a co-conspirator against a co-defendant being tried separately, unless it is shown that a conspiracy existed at the time the threats were made.—*Langford v. The State*, 130 Ala. 74; Greenleaf on Evidence (16th Ed.). § 94; 6 A. & E. Ency. Law, 867. The court erred in permitting the solicitor to argue to the jury that the defendant ought to have Orr there as a witness.—*Eth-*

*ridge v. The State,* 124 Ala. 106; *Crawford v. The State,* 112 Ala. 1. Charge 6 is a correct proposition of law. Charge 10 should have been given, as should have charge 21.—*Kennedy v. The State,* 140 Ala. 1.

MASSEY WILSON, Attorney General, and BORDEN H. BURR, for the State.—The court's action in reference to the jury box at the present and subsequent terms of the court was without error.—§ 4985, code 1896; *West v. The State,* 118 Ala. 100; *Shelton v. The State,* 73 Ala. 5. If error, in the absence of fraud shown, it is cured by § 4997, code 1896.—*Stewart v. The State,* 137 Ala. 33. A conversation between Orr and the defendant was properly admitted as a part of the res gestae.—*Henry v. The State,* 107 Ala. 22; *Plant v. The State,* 140 Ala. 52; *Campbell v. The State,* 133 Ala. 81. It was also properly admitted as tending to show conspiracy.—*Bonner v. The State,* 107 Ala. 97; *Martin v. The State,* 136 Ala. 32; *Smith v. The State,* 136 Ala. 1; *Buford v. The State,* 132 Ala. 6. The testimony of witness, Dawkins, as to the conversation of the defendant and his co-defendant was properly admitted.—*Buford v. The State, supra; Thomas v. The State,* 130 Ala. 62; *Jolly v. The State,* 94 Ala. 19. Threats made by co-defendant, Worthey, were admissible.—*Ray v. The State,* 126 Ala. 9; *Finch v. The State,* 81 Ala. 41; *King v. The State,* 90 Ala. 612. The argument of the solicitor was not improper.—*Dollar v. The State,* 99 Ala. 236.

The request for written instruction was general and if any instruction was bad, the court will not be in error for refusing all.—*Viberg v. The State,* 137 Ala. 73. Charge 3 is an argument, and it fails to hypothesize the elements of self-defense.—*McClellan v. The State,* 140 Ala. 99; *Plant v. The State,* 1b. 52. Charge 21 is also bad.—*McClellan v. The State, supra.*

TYSON, J.—In support of the motion to quash the special venire drawn for the trial of the case, it appears, by the agreed statement of facts, that at a former term of the court, on motion of the defendant, the special venire drawn for the trial of his case was quashed because

of the illegality in the preparation of the box by the jury commissioners containing the names from which juries are required to be drawn, and properly so.—§ 4982, ·ode 1896. It is also made to appear, that the jury commissioners subsequently prepared another box in all respects, as required by the statutes, and it was from this box containing the names of the qualified jurors that the special venire was drawn to which the objection here urged was taken. There is no merit in it.—West v. State, 118 Ala. 100, 24 South. 48. The conversation had between defendant, Orr, and Worthey, which the testimony on the part of the state tends to establish, just immediately before the difficulty took place, in which the killing occurred, under the circumstances shown by the testimony, were clearly competent. If believed by the jury they tended to illustrate the subsequent conduct of defendant, and to give meaning and point to it, and also tended to show a conspiracy between those parties to do grevious bodily harm to or to take the life of the deceased.—Smith v. State, 136 Ala. 1, 34 South. 168; Bonner v. State, 107 Ala. 97, 18 South. 226.

It may be conceded for the purpose of this case that the threats by Worthey against the deceased, indulged in long before the fatal encounter, if made, were not competent for any purpose other than to show his hostility to the prosecution and his bias for the defendant. And it may be further conceded that they would have been inadmissible unless Worthey had testified as a witness for defendant. But this he did. In his testimony, he not only denied making the threats, but testified that he and deceased were on friendly relations with each other. They were clearly competent for the purposes indicatd above.—Haralson v. State, 82 Ala. 47, 2 South. 765; People v. Brooks, (N. Y.) 30 N. E. 189, and cases there cited. Nor was it of consequence that this testimony may have been incompetent at the time it was offered, if it was subsequently rendered so, as was done.—Ray r. State, 126 Ala. 9, 28 South. 634. If the defendant perceived that this evidence should have been limited in its consideration by the jury to the purposes, for which we have said it was competent, he should have made a re-

3 R

quest of the court to that end. He had no right to have it excluded.—*Williams v. State,* 81 Ala. 1, 1 South. 179, 60 Am. Rep. 133. In view of the remarks of defendant's counsel in his speech to the jury, we are unwilling to affirm that the remarks of the solicitor in reply thereto should have been excluded. It may be admitted that the prosecution had the right to have the remarks of opposing counsel excluded (*Crawford v. State,* 112 Ala. 1, 21 South. 214), but this not being done, the right to reply to them cannot be seriously doubted, upon the same principle often recognized by this court that illegal evidence may be rebutted by evidence of the same character. The court committed no error, therefore on this point. This brings us to a consideration of the charges refused to defendant. Charges 3 and 11 requested by him are each an argument, and, besides, were calculated to mislead the jury to the conclusion that he had the right, as a matter of law, to repudiate the accusation made by the deceased in such language as was calculated to provoke or encourage the difficulty which ensued between them. Furthermore, there was evidence from which the jury may have inferred that his reply was for the purpose of bringing on the difficulty which had been preconceived and planned. Charges 4 and 5 clearly invade the province of the jury. Whether there was a conspiracy between defendant and Worthey or between defendant, Worthey, and Orr, was a question of fact, under the testimony, for the determination of the jury. Charge 6 sought to have the jury to exclude from their consideration a part of the testimony and was, therefore, bad. Charge 10 pretermits all consideration of defendant's freedom from fault in producing the necessity to take the life of the deceased as well as his duty to retreat. In view of the tendency of the evidence showing a conspiracy between defendant and Worthey, charge 12 was properly refused, as being calculated to mislead the jury. Charge 21 is subject to the same vice as charge 10. It is wholly unlike the one approved in *Kennedy v. State,* 140 Ala. 1, 37 South. 90, as will readily appear by a comparison with it, and with what was there said with respect to that charge.

[Fuller v. The State.]

There was no error shown by the record, and the judgment must be affirmed.

Affirmed.

WEAKLEY, C. J., and SIMPSON and ANDERSON, JJ., concur.